T. E. POWELL ET AL v. CITY OF BAIRD ET AL.

No. 7554. Decided May 31, 1939.
Rehearing overruled July 19, 1939.
(128 S. W., 2d Series, 786.)

*B. L. Russell,* of Baird, and *W. E. Martin* and *Ben L. Cox,* both of Abilene, for appellants.

The action of the city election officials in preventing the plaintiff and 116 other persons from voting at an election for the issuance of bonds for an electric power plant, because they had not paid a city poll tax, was such discrimination against a class as to render such election void and of no effect. Cameron v. Connally, 299 S. W. 221; Wendover v. Tobin, 261 S. W. 434; 43 C. J. 518 and notes.

*Scarborough & Fly,* of Abilene, for appellees.

The laws of Texas having authorized incorporated cities to levy and collect a poll tax, as a prerequisite to voting, it is the duty of the citizen to pay such tax before he is entitled to vote. See authorities cited in the opinion.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This case is before this Court on certified questions from the Court of Civil Appeals for the Eleventh District at Eastland. The certificate sufficiently states the case. It is as follows:

"TO THE SUPREME COURT OF TEXAS:

"On September 30, 1938, an election was held in the City

of Baird, Callahan County, Texas, for the purpose of determining whether the City of Baird would be authorized to issue bonds for the purpose of financing construction of an electric light and power system for said city. At said time, and for many years prior thereto, the City of Baird had, by ordinance, levied a poll tax on the citizens of Baird under the age of 60 years and over the age of 21 years. At said election payment of a city poll tax, by those subject thereto, was required as a prerequisite to a right to vote in said city election. One hundred sixteen persons who were in all respects qualified to vote at said election, except that they had not paid a city poll tax, to which they were subject, did not vote in said election because of the rule enforced and promulgated by the City of Baird and election officers to the effect that payment of a city poll tax, by those subject thereto, was and would be held a prerequisite to the right to vote in said election. The majority of those voting at said election voted for the issuance of bonds. T. E. Powell and others, residents and owners of property situated within the City of Baird and qualified voters of said city, instituted a contest of said election. Upon trial before the court without a jury, judgment was rendered for the contestees, the City of Baird and its Mayor, Hon. H. Schwartz. Upon the trial of the case one of said 116 persons aforesaid, who did not vote at said election because of said rule to the effect that residents of Baird subject thereto who had not paid a city poll tax were not qualified to vote at said election, testified, (over the objection of contestants that such testimony was incompetent, irrelevant and prejudicial, and that it was not permissible to prove how any of the 116 persons would have voted, and that the exclusion of the said 116 persons was the exclusion of a class of voters sufficient in number that they could have changed the result of said election) ; that if he had been permitted to vote he would have voted for the issuance of said bonds. Thereupon it was agreed, subject to said objection, and without waiving same, that 58 of said 116 persons, who would not have been permitted to vote at said election if they had offered to vote because they had not paid their city poll taxes, would have, if they had been permitted, voted for the issuance of said bonds, and 58 would have voted against the issuance of said bonds.

"Upon appeal to this court by the contestants, the majority of this court held that requirement of payment of a city poll tax, as a prerequisite to a right to vote at a city election, by a city such as Baird, incorporated under the provisions of the statutes referable to 'Cities and Towns,' was not in contra-

vention of the Constitution of Texas, for the reason that the laws of Texas authorized such a city to levy and collect a city poll tax and Art. 6, sec. 2 of the Constitution of Texas in stating the qualification of voters contains the following language: '* * provided further, that any voter who is subject to pay a poll tax *under the laws of the state of Texas* shall have paid said tax before offering to vote at any election in this State * * *,' and Art. 2955, R. S. 1925, after reciting the qualification of voters in this State, contains, among other things, the following recital: 'Provided that any voter who is subject to pay a poll tax under the laws of this State * * shall have paid said tax before offering to vote at any election in this State,' and Art. 1030, R. S. 1925, as amended in 1931, authorized the City of Baird to levy and collect an annual poll tax, as was done in this instance, from which we concluded, not that the ordinance of the City of Baird levying a poll tax was a law of the State of Texas, but that such ordinance and the requirement of payment, by those subject thereto, of a city poll tax as a prerequisite to the right to vote at said municipal election was authorized, within the meaning of said constitutional and statutory provision, '*under the laws of the State of Texas.*'

"Because the members of this court were unable to agree as to the proper answer to the questions presented, and because of the great importance of said questions to the entire citizenship of Texas, upon motion of the contestants (appellants), while the motion for rehearing of said cause is pending, we deem it advisable to and do hereby most respectfully certify to your honors the following questions, and herewith transmit our opinions in said case.

"1. Is requirement of payment of a city poll tax, by those subject thereto, as a prerequisite to the right to vote at said municipal election in contravention of the Constitution of Texas?

"2. If the first question should be answered 'Yes,' then was evidence admissible to show how members of the excluded class of voters would have voted had they been permitted to vote?"

### OPINION.

Before proceeding to answer the first question certified, we deem it expedient to set out in this opinion the constitutional and statutory provisions in force in this State which are either directly or indirectly involved. Such provisions are the following:

Section 1 of Article VI:

"The following classes of persons shall not be allowed to vote in this State, to-wit:

"First: Persons under twenty-one (21) years of age.

"Second: Idiots and lunatics.

"Third: All paupers supported by any county.

"Fourth: All persons convicted of any felony, subject to such exceptions as the Legislature may make.

"Fifth: All soldiers, marines and seamen, employed in the service of the Army or Navy of the United States. Provided that this restriction shall not apply to officers of the National Guard of Texas, the National Guard Reserve, the Officers Reserve Corps of the United States, nor to enlisted men of the National Guard, the National Guard Reserve, and the Organized Reserves of the United States, nor to retired officers of the United States Army, Navy, and Marine Corps, and retired warrant officers and retired enlisted men of the United States Army, Navy, and Marine Corps. (Sec. 1, Art. 6, adopted election Nov. 8, 1932.)"

Section 2 of Article VI:

"Every person subject to none of the foregoing disqualifications, * * * shall be deemed a qualified elector; * * * and provided further, that any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before offering to vote at any election in this State and hold a receipt showing that said poll tax was paid before the first day of February next preceding such election. * * *"

Section 3 of Article VI:

"All qualified electors of the State, as herein described, who shall have resided for six months immediately preceding an election, within the limits of any city or corporate town, shall have the right to vote for Mayor and all other elective officers; but in all elections to determine expenditures of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town; provided, that no poll tax for the payment of debts thus incurred, shall be levied upon the persons debarred from voting in relation thereto."

Section 3 of Article VII:

"One-fourth of the revenue derived from the State occupation taxes and poll tax of one dollar on every inhabitant of the State, between the ages of twenty-one and sixty years,

shall be set apart annually for the benefit of the public free schools; * * *"

Section 1 of Article VIII:
"Taxation shall be equal and uniform. * * * The Legislature may impose a poll tax. * * *"

"Article 1030, R. C. S.:
"The City Council shall have power to levy and collect an annual poll tax, not to exceed One ($1.00) Dollar of every inhabitant of said city over the age of twenty-one (21) and under sixty (60) years, those persons exempt by law from paying the State Poll Tax excepted, who is a resident thereof at the time of such annual assessment. (Acts 1875, p. 113; G. L. vol. 8, p. 485; Acts 1931, 42nd Leg., p. 377, ch. 223, sec. 1.)"

Article 2955, R. C. S.:
"Every person subject to none of the foregoing disqualifications * * * shall be deemed a qualified elector. * * *; provided that any voter who is subject to pay a poll tax under the law of this State or ordinances of any city or town in this State, shall have paid said tax before offering to·vote at any election in this State and holds a receipt showing that said poll tax was paid before the first day of February next preceding such election; * * *"

Article 7046, R. C. S.:
"There shall be levied and collected from every person between the ages of twenty-one and sixty years, resident within this State on the first day of January of each year (Indians not taxed, and persons insane, blind, deaf or dumb, or those who have lost one hand or foot, or are permanently disabled, excepted), an annual poll tax of one dollar and fifty cents, one dollar for the benefit of the free schools and fifty cents for general revenue purposes. Said tax shall be collected and accounted for by the tax collector each year and appropriated as herein required. No county shall levy more than twenty-five cents poll tax for county purposes. The poll tax due from citizens of unorganized counties shall be paid in the county to which the unorganized county is attached for judicial purposes. (Acts 4th C. S. 1920, p. 11.)"

So far as is pertinent to any question involved in this case, Section 2 of Article VI of our Constitution provides that every person subject to none of the disqualifications contained in Section 1 of the same Article, who has attained the age of twenty-one years, etc., may vote, etc., provided, "that any

voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before offering to vote at any election in this State and hold a receipt showing that said poll tax was paid before the first day of February next preceding such election." It will be noted that this poll tax provision is all-embracing, and covers all elections in this State.

Under the provisions of Section 3 of Article VI of our Constitution, supra, all qualified electors of this State, etc., who shall have resided for six months immediately preceding an election within the limits of any city or town, shall have the right to vote for the elective officers of such city or town; but in all elections regarding the expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or town; provided no poll tax can be levied to pay any debt thus incurred. Under this section of our Constitution, when an election is held in a city to determine the expenditure of money or assumption of debt, the voter must be a qualified voter generally, and, in addition thereto, must be a property tax payer. If the election is on a question of the expenditure of money or assumption of debt, the voter who is subject to the payment of a poll tax must have paid same before February 1st preceding the election.

Section 3 of Article VII of our Constitution, supra, so far as applicable here, has effect to levy annually a one dollar poll tax for the benefit of the public free schools of this State.

Section 1 of Article VIII of our Constitution, supra, so far as pertinent here, provides that the Legislature may impose a poll tax. Nothing is said in this section about the amount of such tax.

Article 1030, R. C. S. 1925, supra, authorizes a city to levy and collect from every inhabitant thereof, over the age of twenty-one and under the age of sixty years, except those exempt by law, an annual poll tax of one dollar.

Article 2955, R. C. S., supra, so far as pertinent here, provides, in substance, that any voter who is subject to pay a poll tax under the laws of this State, or the ordinances of any city of this State, must have paid said tax before offering to vote at any election in this State, and must hold a receipt showing that said poll tax was paid before the first day of February next preceding such election. It will be noted that this statute, as regards the payment of poll taxes, is, in substance, in the same language as Section 3 of Article VI of our Constitution, except it by express words covers city poll taxes.

Article 7046, R. C. S., supra, with certain exceptions, levies an annual State poll tax of $1.50 against every person between the ages of twenty-one and sixty years. This article also has the effect to authorize counties to levy a poll tax of twenty-five cents.

As a result of all the foregoing laws, we have a State poll tax of $1.50 directly levied by State law. Also, State laws authorize counties to levy a poll tax of twenty-five cents, and cities to levy a poll tax of $1.00.

■ As already stated, Article 1030, R. C. S., supra, authorizes cities to levy an annual poll tax of $1.00. Also, as already shown, Article 2955, R. C. S., supra, expressly provides that a voter must pay his city poll tax in order to qualify as a voter in any election. These two articles, when considered together, disqualify all voters in all elections who fail to pay their city poll taxes in the manner and at the time provided by law.

■ Reverting to Section 2 of Article VI of our Constitution, supra, we find that it, in very plain and simple language, disqualifies as a voter, at all elections, every person who is subject to the payment of a poll tax "under the laws of the State of Texas," unless such person has paid such poll tax by a certain named date. Simply stated, under the terms of this constitutional provision, no person subject to a poll tax is qualified to vote at any election in this State unless he has paid such tax before February 1st next preceding such election. A further reading of this constitutional provision will show that the poll tax there referred to is one that the voter is subject to pay "under the laws of the State of Texas."

It seems to be contended on the one side to this litigation that for a voter to be subject to a poll tax "under the laws of the State of Texas," such tax must be directly levied by some State law. It seems to be contended on the other side that a tax is levied "under the laws of the State of Texas" if it is levied by direct authority of a State law. Simply stated, one side contends that this constitutional provision refers only to poll taxes that some constitutional or statutory law directly levies. The other side contends that such provision comprehends all poll taxes, whether levied directly by State law or by direct authority of State law.

■ It is our opinion that a poll tax is levied under a State law, within the meaning of Section 2 of Article VI of our State Constitution, if some State law directly authorizes such levy. In this instance Article 1030, R. C. S., supra, directly author-

izes cities to levy and collect poll taxes. It follows that such poll taxes, when so levied, are levied by direct authority of a State law, and are, therefore, levied under a State law. Webster's New International Dictionary; 65 C. J., 1202; Savage v. Umphries (Civ. Appls.) 118 S. W. 893; Linger v. Balfour (Civ. Appls.), 149 S. W. 795; Bonham v. Fuchs (Civ. Appls.), 228 S. W. 1112. As used in the above constitutional provision, the word "under" is certainly used as a preposition, indicating subjection, guidance, or control. It is used in a sense of "by authority of."

Simply stated, under the above constitutional provision, before a voter is qualified as such, he must pay any poll tax that he is subject to, which has been levied by authority of any State law, and such voter must "hold a receipt showing that said tax was paid before the first day of February next preceding such election."

■ It is evident from what we have said that that part of Article 2955, R. C. S., supra, which requires those subject to the payment of city poll taxes to pay them in order to qualify as voters in any election, is valid and constitutional. In fact, under Section 2 of Article VI of our Constitution, such would be the law absent such part of such statute. The statute is merely a statutory declaration of constitutional law.

In Savage v. Umphries, supra, the San Antonio Court of Civil Appeals, speaking through the late Justice Neill, reviewed the very question as to whether, under Section 2 of Article VI of our Constitution, the failure of a voter to pay a city poll tax, to which he was subject, disqualified him as a voter, and held that it did. We quote the following from the opinion under discussion:

"It is true that where the Constitution of a state fixes the qualifications, and determines who shall be deemed qualified voters, in direct, positive, and affirmative terms, these qualifications cannot be added to by legislative enactments, yet, as the constitutional provision in section 2, art. 6, hereinbefore quoted, required that 'any voter who is subject to pay a poll tax under the laws of the state of Texas shall have paid the tax before he offers to vote at any election in this state,' it cannot be said that this qualification is added to by the legislative enactment which requires the payment of a city poll tax by a voter who is subject to its payment; for such tax is required under the laws of the state of Texas, though it be a municipal tax, for no tax can be levied by a city unless it is done under the laws of the state. McCormick v. Jester (Tex.

Civ. App.) 115 S. W. 278; People v. Teague, 106 N. C. 576, 11 S. E. 665."

In Linger v. Balfour, supra, the very question here involved was before the Court of Civil Appeals at Amarillo. The opinion does not decide the effect of failure to pay a city poll tax in the direct language that the opinion in Savage v. Umphries does, but such opinion does assume the law to be as announced in the Savage Case. The same is true as to the opinion in Bonham v. Fuchs, supra. In this connection, we here call attention to the fact that Section 2 of Article VI of our Constitution as above construed was resubmitted and re-adopted in 1921, with the language in regard to the payment of poll taxes as a qualification for voting unchanged.

We answer the first certified question as follows:

Under the Constitution and laws of this State, a voter subject thereto must pay his city poll tax at the time required by law, in order to qualify as a legal voter in any election in this State. Obviously, this answer makes it unnecessary to answer the second certified question.

Opinion delivered May 31, 1939.

Rehearing overruled July 19, 1939.