**TONDRE et al. v. HENSLEY et al.**

**No. 11971.**

Court of Civil Appeals of Texas.
San Antonio.
June 15, 1949.

Rehearing Denied July 13, 1949.

Second Motion for Rehearing Denied
Sept. 14, 1949.

Dobbins & Howard, San Antonio, for appellants.

William N. Hensley, San Antonio, Oliver & Peace, San Antonio, for appellees.

NORVELL, Justice.

This is an election contest brought by Joe H. Tondre and others, residents of Common School District No. 29 of Bexar County, known as the Idlewild District, who contend that at an election held on September 11, 1948, a majority of the legally qualified voters of said District voted to consolidate with the La Coste Consolidated Common County District No. 3 of Medina and Bexar Counties. The results of said election in the Idlewild District were canvassed by the Commissioners' Court of Bexar County, which found that one hundred and twenty-two votes had been cast in said election, and that sixty-one votes had been cast for consolidation and sixty-one against consolidation.

Although the proposition carried in the La Coste district by an overwhelming vote, consolidation was not effected because of the tie vote in the Idlewild District.

The contestants who were proponents of consolidation challenged the legality of eighteen votes cast at the election, while the contestees contended that two of the persons who voted at said election were not entitled to vote. After a trial to the court without a jury, judgment was rendered in favor of the contestees. Upon request, the trial judge filed findings of

fact and conclusions of law, among which were the following:

"The court further finds that all of the voters contested by contestants were qualified to vote in said election.

"The court further finds that Carl F. Price (one of the voters contested by contestees) voted for consolidation, and that the said Carl F. Price did not reside in Common School District No. 29, and was not qualified to vote in said election."

The judgment appealed from must be reversed because the first finding or conclusion above set out was erroneous insofar as the voters, Tomas Lopez, C. L. Townsend and Robert C. Duncan are concerned.

As to the second finding mentioned, relating to Carl F. Price, we are of the opinion that the record fails to show by competent evidence whether he voted for or against consolidation.

■ We do not think this is a case for rendition of judgment. While the Idlewild District (No. 29) lies entirely within the boundaries of Bexar County Voting Precinct No. 74 (which also includes additional territory), many of those who voted at the election held poll tax receipts bearing the designation of an adjoining voting precinct, No. 75. Some of these persons holding Precinct No. 75 poll taxes may have been entitled to vote under the rules hereinafter discussed.

As to Tomas Lopez, it appears that his poll tax receipt gave his residence address as 517 South Concho Street, which is a place within the City of San Antonio and Voting Precinct No. 1 of Bexar County. No part of Voting Precinct No. 1 lies within Idlewild Common School District No. 29, nor is said voting precinct contiguous to said Common School District.

■ It could hardly be said that any one could be so mistaken as to the location of the boundaries of these governmental subdivisions that he could reasonably believe that the address shown on the poll tax receipt was actually within the boundaries of the school district. The vote of Tomas Lopez should have been rejected upon authority of Major v. Loy, Tex.Civ.App., 155 S.W.2d 617.

■ In view of the remand of this case, we deem it proper to say that in our opinion the rule of Major v. Loy should not be extended so as to disqualify voters from voting in a school district election when they actually live within the district, but because of confusion as to the location on the ground of voting precinct lines they have secured poll tax receipts bearing an incorrect voting precinct designation.

■ As pointed out in Major v. Loy, the statutory provisions relating to the issuance of poll taxes are designed to prevent election frauds. If voting in one part of the county were allowed upon a poll tax issued for a precinct in another part of the county without a change of residence, the possibilities of corruption are fairly obvious. However, it is a different matter when contiguous or near at hand voting precincts are involved and the poll taxpayer is mistaken as to the location of precinct lines and this confusion is also shared by the tax assessor-collector, the issuing authority for poll tax receipts. Voters should not be disqualified where uncertainty exists both in the minds of the tax assessor-collector and the voter as to where a precinct line runs.

■ One of appellants' points attacks the finding that C. L. Townsend was a legal voter upon the ground that the same is against the overwhelming preponderance of the evidence. This point is well taken. While Townsend testified that he spent about half his time on a small farm owned by him and located within the school district, and this might be considered as some evidence of residence within the district, yet it appears that Townsend for a number of years maintained a residence for himself and family at 122 Livingston Avenue, which is outside the school district. A question of change of residence is therefore involved. We have carefully examined the evidence relating to this voter, as disclosed by the statement of facts, particularly the testimony given by Townsend himself, and conclude that although Townsend may have intended to make the farm his legal residence in the future, the evidence shows overwhelmingly that he had not yet carried that intention into effect.

29 C.J.S., Elections § 21, p. 43; 18 Am. Jur. 219, § 59.

 The voter Pete M. Duncan had lost his right leg which had been severed about six inches below the knee. He was exempt from that part of the poll tax levied by statute, but was nevertheless liable for that part of the poll tax ($1.00) imposed by Article 7, § 3, of the Texas Constitution, Vernon's Ann.St.

Appellants state in their brief that: "The constitutional tax of $1.00 is distinguishable from the balance of the poll tax which is required only by levy of the Legislature. The portion of Article 7, Section 3, relating to the levy of a $1.00 poll tax is self-executing. The exemptions from the payment of a poll tax which the Legislature has provided in Sections 2959, 2960 and 7046 are not to be found in the Constitution and these exemptions cannot relieve a taxpayer of his obligation to pay the $1.00 constitutional poll tax which is levied by the Constitution itself."

This statement is supported by the cases of Solon v. State, 54 Tex.Cr.R. 261, 114 S. W. 349 and Powell v. City of Baird, 133 Tex. 489, 128 S.W.2d 786, and also by an advisory opinion prepared by the Attorney General at the request of the governor of this State in 1944. In the course of this opinion the Attorney General said:

"This identical constitutional question was presented to and passed upon by the late Chief Justice Cureton of the Supreme Court of Texas, while he was Attorney General of Texas. In Attorney General's opinion No. 1972 that distinguished jurist in a conference opinion signed by himself and by Federal District Judge W. A. Keeling, who then was First Assistant Attorney General, held that:

" 'It is, therefore, apparent that since the Constitution, in express terms levies a poll tax, the Legislature is powerless to now ingraft exceptions to the constitutional amendment as it was enacted by the people.'

"You are, therefore, advised that it is the considered opinion of this department that Articles 2959, 2960 and 7046, Vernon's Annotated Civil Statutes are unconstitutional in so far as they purport to exempt the classes of persons therein named from the payment of the one dollar constitutional poll tax or to make those classes of persons qualified voters without the payment of any poll tax."

 It seems that Townsend and Duncan voted against consolidation, but the record fails to show how Lopez voted. While the trial court found that Price voted for consolidation, he was permitted to testify as to how he had voted over an objection that the ballot was the best evidence. The best evidence rule is applicable, and the objection should have been sustained. Savage v. Umphries, Tex.Civ.App., 118 S. W. 893; 16 Tex.Jur. 186, § 143.

Some contention is made that the objection was not properly saved. When Price was asked how he had voted, appellants' attorney stated: "We object to that as not being the best evidence as to how he voted. The ballot he cast is the best evidence."

 The question was not immediately answered, but when the matter was returned to shortly thereafter, appellants' counsel noted the "same objection to all that line of testimony." We think the objection was properly saved. It appears conclusively that appellants were insisting upon the best evidence rule.

For the reasons pointed out, the judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

On Appellants' Motion for Rehearing.

Appellants by motion for rehearing contend that under the holdings set forth in our original opinion, this case should not be remanded but that judgment should be rendered for appellants.

 The record fails to show how Lopez voted. We held that it was not shown by competent evidence how Price voted. We also held that the finding that Townsend was qualified to vote at the election was against the overwhelming preponderance of the evidence, but this does not authorize us to substitute a finding to the contrary of the original finding made by the trial judge. Happ v. Happ., Tex.Civ.

App., 160 S.W.2d 227. We consequently adhere to our order remanding the cause.

Appellants' motion for rehearing is overruled.